## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SANDERS-DARIGO, | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 11-4050 |
| CAREERSUSA, | : | |
| Defendant. | : | |

March _1__, 2012                                                                                          Anita B. Brody, J.

### MEMORANDUM

Plaintiff Michele Sanders-Darigo brings suit against Defendant CareersUSA alleging

discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C.

§ 621 *et seq.*; the Americans with Disabilities Act ("ADA"), 42 U.S.C. 12101 *et seq.*; and the

Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat. Ann. § 951 *et seq.*  Additionally,

Sanders-Darigo brings a claim against CareersUSA for violation of the Family Medical Leave

Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*  I exercise federal question jurisdiction over Sanders-

Darigo's ADEA, ADA, and FMLA claims pursuant to 28 U.S.C. § 1331, and supplemental

jurisdiction over her PHRA claim pursuant to 28 U.S.C. § 1367.  CareersUSA has filed a Motion

to Dismiss, or in the Alternative, Motion to Transfer.  For the reasons set forth below, I will grant

CareersUSA's motion to transfer.

## I.  BACKGROUND

### A.  Factual Background[1]

---

[1] All facts in this section are taken from Sanders-Darigo's Complaint, unless otherwise
noted.

Michele Sanders-Darigo is forty-three years old.  She began working for CareersUSA as a Regional Director for the Feasterville, Pennsylvania and Cherry Hill, New Jersey branches of CareersUSA in February 2008.

On February 25, 2008, Sanders-Darigo entered into a Confidentiality and Non-Compete Agreement (the "Agreement") with CareersUSA.  Def.'s Mot. Ex. D.  Paragraph 17 of the Agreement provides:

> This Agreement is being executed in, and its validity, interpretation, performance and effect shall be governed in accordance with the laws of the State of Florida.  Any proceeding arising between the parties in any manner or related to this Agreement shall to the extent permitted by law be brought in Palm Beach County, Florida.

Def.'s Mot. Ex. D.

In early 2008, Sanders-Darigo began having severe uterine bleeding that caused her to experience lethargy, headaches, urinary incontinence, heart palpations, hot flashes, depression, insomnia, severe pain, and a marked decline in energy.

In October 2008, Sanders-Darigo advised her supervisors that she needed to have a hysterectomy in November 2008 because she was experiencing severe uterine bleeding, and that the surgery would require her to be out of work for six to eight weeks.  Immediately after Sanders-Darigo informed her supervisors of the surgery, they began treating he differently by doing such things as changing her job title, drastically reducing her commission structure, subjecting her to constant scrutiny, questioning her job performance, and undermining her authority with her subordinates.  Additionally, Sanders-Darigo was assigned sales goals that were unreasonable and unobtainable, she was not reimbursed for her marketing expenses, and she was not given credit for her marketing ideas.  As a result of this treatment, Sanders-Darigo chose to

postpone her surgery until February 2009.

In February 2009, Sanders-Darigo requested leave under the Family Medical Leave Act ("FMLA") due to her condition.  Additionally, on February 2, 2009, Sanders-Darigo requested an accommodation of working less than full time.  CareersUSA did not respond to her request. After her surgery, Sanders-Darigo requested an additional one week extension to her leave, which CareersUSA denied.

When Sanders-Darigo was on leave she was advised that she was the subject of an investigation and that her job was in jeopardy.  However, she was never told why she was being investigated and the investigation never resulted in disciplinary action.

When Sanders-Darigo returned from leave, she was demoted, given extra job duties, advised that her job was in jeopardy, and accused of "bad mouthing" the company.  Her base salary was reduced by 30%, even though other CareersUSA employees only received base pay reductions of between 4%-10%.  Additionally, Sanders-Darigo was relocated from her office in Cherry Hill, New Jersey to an office in Philadelphia, Pennsylvania despite the fact that her office location was a term of her employment with CareersUSA.  This change in office location resulted in Sanders-Diego having to pay Philadelphia wage tax.

On May 22, 2009, Sanders-Darigo submitted a written complaint of discrimination to Vice President, Administrator Marnie Bauman.  CareersUSA did not investigate her complaint.

In July 2009, Sanders-Darigo needed to undergo a second surgery for her condition; therefore, she requested FMLA leave.  Additionally, she requested an accommodation of working less than full time when she first returned to work after the surgery. After these requests were made, CareersUSA harassed Sanders-Darigo.  Despite complaints about this harassment to

Bauman, the negative treatment continued.

During her second leave, Sanders-Darigo spoke with Bauman on a regular basis.  Bauman

informed her that her job would be available when she returned, and told her, "you may return to

work when you are healthy."  Compl. ¶ 40.  At some point, Sanders-Darigo informed

CareersUSA that she might be able to return to work on September 9, 2009.  She was informed

that she was not permitted to return until she was "completely well."  Compl. ¶ 41.

On August 20, 2009, while Sanders-Darigo was still on leave, she was informed that her

position was no longer available and that she had exceeded her leave under the FMLA.  As a

result, Sanders-Darigo was terminated.  Her job duties were assumed by a younger male.

## B.  Procedural History

On June 22, 2011, Sanders-Darigo filed her Complaint.  On June 27, 2011, Sanders-

Darigo sent CareersUSA a copy of the Complaint, a Notice of Lawsuit and Request to Waive

Service of Summons, and a Waiver of Service of Summons.[2]  Pl.'s Resp. Ex. B.  CareersUSA

failed to respond to Sanders-Darigo's Request to Waive Service of Summons.  On  October 31,

2011, Sanders-Darigo personally served CareersUSA with a copy of the Complaint.[3]  Pl.'s Resp.

Ex. C.  Thus, the Complaint and Summons were not served upon CareersUSA until 131 days

---

[2] The parties dispute whether Sanders-Darigo's Request to Waive Service of Summons
complied with Federal Rule of Civil Procedure 4(d)(1). I decline to weigh-in on this dispute
because it is irrelevant to my decision on CareersUSA's motion.

[3] Sanders-Darigo contends that CareersUSA was personally served on October 28, 2011.
However, the Affidavit of Service clearly states that the Summons and Complaint/Exhibits were
received on October 28, 2011 and that service was effected on CareersUSA on October 31, 2011.
*See* Pl.'s Resp. Ex. C.  Although CareersUSA mentions that Sanders-Darigo may not have
personally served the proper entity, it concedes in its motion that it was served on October 31,
2011.  *See* Def.'s Mot. ¶ 61.

after the Complaint was filed.

On November 23, 2011, counsel for CareersUSA and Sanders-Darigo exchanged emails regarding the possibility of an extension of time for CareersUSA to respond to the Complaint if CareersUSA agreed to accept service of the Complaint.  *See* Pl.'s Resp. Ex. E; Def.'s Reply Ex. A.  Counsel for Sanders-Darigo stated that she would consent to an extension of time for CareersUSA to file an Answer to the Complaint.  *Id.*  Whereas, counsel for CareersUSA sought to confirm that the parties had reached an agreement extending CareersUSA's time to file a responsive pleading.  As a result, the parties were unable to reach an agreement.[4]  On December 9, 2011, CareersUSA filed a motion for an extension of time to respond to Sanders-Darigo's Complaint.  *See* ECF. No. 2.  I granted CareersUSA's motion for an extension of time to respond to the Complaint until December 20, 2011.  *See* ECF No. 4.  I did not limit CareersUSA's response to an Answer; rather, my Order permitted CareersUSA to respond to the Complaint in any manner consistent with the Federal Rules of Civil Procedure.  On December 20, 2011, CareersUSA responded to the Complaint by filing the instant Motion to Dismiss, or in the Alternative, Motion to Transfer Venue.  *See* ECF. No. 5.

## II.  SERVICE OF PROCESS

CareersUSA seeks to dismiss the Complaint because Sanders-Darigo did not timely serve

---

[4] On November 28, 2011, counsel for Sanders-Darigo sent an email to counsel for CareersUSA that stated, "Please allow this correspondence to confirm that we will agree to extend the time to file an Answer to Plaintiff's Complaint until December 9, 2011.  The extension is for the purpose of filing an Answer **only**."  Pl.'s Resp. Ex. F.  Sanders-Darigo asserts that this email proves that CareersUSA accepted the agreement for an extension of time to file an Answer only.  However, there is no indication in the record that CareersUSA ever agreed to an extension only to file an Answer.

CareersUSA with the Complaint and Summons.[5]  Federal Rule of Civil Procedure Rule 4(m)

provides:

> If a defendant is not served within 120 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

While Rule 4(m) generally requires service within 120 days of the filing of a complaint, the rule

"require[s] a court to extend time if good cause is shown and [] allow[s] a court discretion to

dismiss or extend time absent a showing of good cause."  *Petrucelli v. Bohringer & Ratzinger,*

*GMBH*, 46 F.3d 1298, 1305 (3d Cir. 1995).  The Third Circuit has developed a two-part inquiry

that each district court must follow in order to determine whether the grant of an extension of

time to serve is proper.  *McCurdy v. Am. Bd. of Plastic Surgery,* 157 F.3d 191, 196 (3d Cir.

1998).  "First, the court must determine whether good cause exists for the failure to have effected

service in a timely manner.  If so, the extension must be granted.  If good cause has not been

shown, however, the court still may grant the extension in the sound exercise of its discretion."

*Id.*  Only after a district court completes this inquiry, and declines to grant an extension of time to

serve, shall a court dismiss an action for failure to serve within 120 days.  *See Toney v. Seibert*,

No. 05-0449, 2005 WL 2219477, at *2-3 (W.D. Pa. Sept. 13, 2005).

Based on the record in this case, it is indisputable that CareersUSA was not served until

131 days after the Complaint was filed.  *See*  Pl.'s Resp. Ex. C.  Therefore, this case should be

dismissed, unless Sanders-Darigo can demonstrate that good cause mandates an extension of

---

[5] Federal Rule of Civil Procedure 12(b)(5), empowers a federal court to dismiss a case for "insufficient service of process," including failure to timely serve a complaint and summons.

time to serve, or this Court decides to grant Sanders-Darigo a discretionary extension of time to serve.

The Third Circuit has "equated good cause with the concept of excusable neglect of Federal Rule of Civil Procedure 6(b)(2), which requires a demonstration of good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance within the time specified in the rules." *MCI Telecomms. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1097 (3d Cir. 1995) (internal quotation marks omitted). Thus, when a court determines whether good cause exists, "the primary focus is on the plaintiff's reasons for not complying with the time limit in the first place." *Id.* Neither "reliance upon a third party or on a process server," "half-hearted efforts by counsel to effect service of process prior to the deadline," nor "inadvertence of counsel" constitutes good cause for failure to timely serve. *Petrucelli*, 46 F.3d at 1307 (internal quotation marks omitted); *accord Ayres v. Jacobs & Crumplar, P.A.*, 99 F.3d 565, 568 (3d Cir. 1996). A "plaintiff's disregard for what she consider[s] the 'technical niceties' of service of process . . . does not constitute good cause." *Ayres*, 99 F.3d at 568.

Here, Sanders-Darigo sent CareersUSA a single request for waiver of service on June 27, 2011. CareersUSA failed to respond to this request. Thus, Sanders-Darigo was required to personally serve CareersUSA. Despite this requirement, Sanders-Darigo did not personally serve CareersUSA until October 31, 2011, more than 120 days after the Complaint was filed. Prior to its delinquency, Sanders-Darigo never requested an extension of time to serve CareersUSA. The only defense Sanders-Darigo provides for her untimely service is that CareersUSA should have accepted her waiver of service request. Regardless of what actions CareersUSA should have taken, Sanders-Darigo was required by the Federal Rules of Civil Procedure to personally serve

CareersUSA if the waiver of service was not returned executed.  Sanders-Darigo made a "half-hearted" attempt to timely effect service.  Her "disregard" for the "technical niceties" of service of process does not constitute good cause for her failure to serve the Complaint and Summons within 120 days after the Complaint was filed.  Therefore, Rule 4(m) does not mandate a grant of extension of time for service.

Even if good cause does not exist to extend Sanders-Darigo's time for service, based on my discretion, I may determine that other factors warrant the grant of an extension.  "Factors for the Court to consider when deciding whether to grant a discretionary extension of time include (1) actual notice of the action; (2) prejudice to the defendant; (3) statute of limitations; (4) conduct of the defendant; (5) whether the plaintiff is represented by counsel; and (6) any other relevant factor."  *Metro. Life Ins. Co. v. Kalenvitch*, No. 10-2108, 2011 WL 2941297, at * 2 n.1 (M.D. Pa. July 20, 2011); *accord Chiang v. U.S. Small Bus. Admin.*, 331 Fed. App'x 113, 116 (3d Cir. 2009); *Gonzalez v. Thomas Built Buses, Inc.*, 268 F.R.D. 521, 527-28 (M.D. Pa. 2010).

In this case, Sanders-Darigo personally served CareersUSA only eleven days after the 120-day deadline.  Although CareersUSA now wishes to dismiss the case because it was not timely served, the record indicates that CareersUSA was willing to accept the untimely service as long as Sanders-Darigo agreed to consent to an extension of time for CareersUSA to file a responsive pleading.  *See* Pl.'s Resp. Ex. E.; Def.'s Reply Ex. A.  While the parties ultimately did not reach an agreement about acceptance of service or an extension of time to file a responsive pleading, the Court did permit CareersUSA to filed a responsive pleading.  If CareersUSA thought it would be prejudiced by the delay in service, it would not have agreed to accept service in exchange for consent to an extension of time to file a responsive pleading.  Given that

CareersUSA has not been prejudiced by the delay in service and that service was effected only eleven days after the 120-day deadline, I will exercise my discretion to nunc pro tunc extend the deadline for Sanders-Darigo to serve CareersUSA and deny CareersUSA's request to dismiss this case for failure to timely serve.

## III.  FORUM NON CONVENIENS

CareersUSA moves to transfer this case to the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1404(a).[6]  CareersUSA argues that transfer of the case is necessary to enforce a forum selection clause in the parties Confidentiality and Non-Compete Agreement (the "Agreement").  Sanders-Darigo contends that the Agreement does not apply to her suit because it is outside of the scope of the forum selection clause, and that even if it does, other factors indicate that transfer of venue is inappropriate in this case.

"The question of the scope of a forum selection clause is one of contract interpretation."

---

[6] CareersUSA moves, in the alternative, to dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(3) because of improper venue as defined by 28 U.S.C. § 1406, or to dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(6) because of the existence of a valid forum selection clause that calls for suit in another federal forum.  It is clear, however, that this case cannot be dismissed pursuant to Rule 12(b)(3) for improper venue because "where venue would be proper in the initial forum court, provided no forum selection clause covered the subject matter of the lawsuit, it is inappropriate to dismiss pursuant to 28 U.S.C. § 1406 (allowing dismissal based on improper venue)."  *Salovaara v. Jackson Nat'l Life Ins. Co.*, 246 F.3d 289, 298 (3d Cir. 2001).  While a party may move to dismiss a case pursuant to Rule 12(b)(6) to enforce a forum selection clause, "as a general matter, it makes better sense, when venue is proper but the parties have agreed upon a not-unreasonable forum selection clause that points to another federal venue, to transfer rather than dismiss."  *Id.* at 298-99.  Moreover, "if a defendant moves under § 1404(a), transfer, of course, is the proper vehicle (assuming the reasonableness of the forum selection clause)."  *Id.* at 299.  Because CareersUSA has moved, based on the forum selection clause, to transfer the case under § 1404(a), I will decline to consider whether to dismiss the case pursuant to Rule 12(b)(6).

*John Wyeth & Brother Ltd. V. Cigna Int'l Corp.*, 119 F.3d 1070, 1073 (3d Cir. 1997).  Like any other contract provision, the first step in interpreting a forum selection clause is to determine whether the clause unambiguously states the parties' intentions.  *Id.* at 1074.  "To be 'unambiguous,' a contract clause must be reasonably capable of only one construction."  *Id.*

The Agreement provides: "Any proceeding arising between the parties in any manner or related to this Agreement shall to the extent permitted by law be brought in Palm Beach County, Florida."  Def.'s Mot. Ex. D.  Sanders-Darigo asserts three reasons why her employment discrimination and FMLA suit is not governed by the forum selection clause.  First, she argues that the actual language of the forum selection clause does not cover this type of suit between her and CareersUSA.  Next, she asserts that because the forum selection clause appears in a non-compete agreement, it cannot cover a suit related to her employment.  Lastly, she contends that because this suit was not instituted until after the twelve-month period in which she agreed not to compete, the forum selection clause has expired.

Sanders-Darigo focuses on *Wild v. Jungle Media Group*, No. 02-5123, 2004 WL 834695 (E.D. Pa. Mar. 17, 2004), to argue that, based on the language of the Agreement, the forum selection clause does not apply to her employment discrimination and FMLA suit because her claims do not arise under the Agreement.  However, unlike the language in Sanders-Darigo's forum selection clause, in *Wild*, the district court interpreted a forum selection clause, which stated, "Any disagreements or disputes *arising under this Agreement* shall be exclusively resolved in . . . New York, New York."  *Wild*, 2004 WL 834695, at *7.  "[W]hether or not a forum selection clause applies depends on what the *specific clause at issue* says.  Drawing analogy to other cases is useful only to the extent those other cases address contract language

10

that is the same or substantially similar to that at issue." *Wyeth*, 119 F.3d at 1075.  The language

of the forum selection clause in *Wild* is substantially different than the language of the forum

selection clause at issue in this case.  Hence, Sanders-Darigo's reliance on *Wild* is misplaced

and the case is inapposite.


Unlike the forum selection clause in *Wild*, the forum selection clause in this case

unambiguously states that it applies to "[a]ny proceeding arising between the parties in any

manner or related to this Agreement . . . ."  Def.'s Mot. Ex. D.  The Agreement explicitly does

not limit the forum selection clause to issues relating to competition between the parties or

disputes arising under the Agreement.  Rather, the language that Sanders-Darigo freely agreed

upon broadly states that the forum selection clause applies to "any proceeding . . . in any manner

. . . ."  Def.'s Mot. Ex. D.  Moreover, while Sanders-Darigo may now be free to compete with

CareersUSA, the events that form the basis for this suit all occurred while the non-compete

agreement was in effect.  There is no indication that expiration of the non-compete period

outlined in the Agreement voided the forum selection clause, and Sanders-Darigo has not

identified any legal authority for such a proposition.  Given the sweeping language of forum

selection clause, it is clear and unambiguous that the forum selection clause applies to Sanders-

Darigo's suit.  Thus, the only issue remaining is whether to transfer this case to the Southern

District of Florida.

Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest

of justice, a district court may transfer any civil action to any other district or division where it

might have been brought or to any district or division to which all parties have consented."  28

U.S.C. § 1404(a).  In deciding whether to transfer a case, a court must consider "the private and

public interests protected by the language of § 1404(a)."  *Jumara v. State Farm Ins. Co.*, 55 F.3d

873, 879 (3d Cir. 1995). "[T]here is no definitive formula or list of the factors to consider . . . ."

*Id.*  Private interests that have been considered include:

> [P]laintiff's forum preference as manifested in the original choice; the defendant's
> preference; whether the claim arose elsewhere; the convenience of the parties as
> indicated by their relative physical and financial condition; the convenience of the
> witnesses-but only to the extent that the witnesses may actually be unavailable for
> trial in one of the fora; and the location of books and records (similarly limited to the
> extent that the files could not be produced in the alternative forum).

*Id.* (internal citations omitted).  Public interests that have been considered include:

> [T]he enforceability of the judgment; practical considerations that could make the trial
> easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora
> resulting from court congestion; the local interest in deciding local controversies at
> home; the public policies of the fora; and the familiarity of the trial judge with the
> applicable state law in diversity cases.

*Id.* at 879-80 (internal citations omitted).

"Within this framework, a forum selection clause is treated as a manifestation of the

parties' preferences as to a convenient forum."  *Id.* at 880.  Although the burden of establishing

the need for transfer usually rests with the defendant moving party, when there is a valid forum

selection clause, "the plaintiff[] bear[s] the burden of demonstrating why [she] should not be

bound by [her] contractual choice of forum."  *Id.* at 879-80.  "Thus, while courts normally defer

to the plaintiff's choice of forum, such deference is inappropriate where the plaintiff has already

freely contractually chosen an appropriate venue."  *Id.* at 880.  Although a forum selection

clause "should not receive dispositive weight," *Jumara*, 55 F.3d at 880, it is "a significant factor

that figures centrally in [a] district court's calculus."  *Stewart Org., Inc. v. Ricoh Corp.*, 487

U.S. 22, 29 (1988).

CareersUSA is a Florida limited liability company with its principal place of business in Florida; it also maintains an office in Pennsylvania. Sanders-Darigo is a resident of New Jersey who worked for CareersUSA in both New Jersey and Pennsylvania. Although CareersUSA argues that it would be more convenient to litigate in Florida, Sanders-Darigo points out that CareersUSA has several times filed suit in the Philadelphia County judicial system. *See* Pl.'s Sur Reply Ex. B. Thus, she contends that CareersUSA's willingness in other cases to avail itself of the Philadelphia judicial system, and its operation of a business in Pennsylvania means that CareersUSA is better able to absorb the financial costs of litigating in Philadelphia than Sanders-Darigo is able to absorb the costs of litigating in Florida. Sanders-Darigo asserts that it would be costly for her to litigate in Florida because she does not have a residence there and she would have to retain Florida counsel. Although, Sanders-Darigo would need to retain counsel wherever this case is litigated, she has sufficiently established that the private interest factor of the convenience of the parties weighs in her favor. Additionally, Sanders-Darigo has established that the events giving rise to her claim occurred in Pennsylvania and New Jersey. Because some of the events occurred in this district, this factor weighs somewhat in favor of Sanders-Darigo. However, Sanders-Darigo cannot establish that any of the other private interest factors weigh in her favor. The factors in her favor cannot overcome the "significant factor" that the parties freely contracted to litigate in the Southern District of Florida.[7] The forum

_____

[7] CareersUSA contends that another private interest factor, the convenience of the witnesses, weighs in favor of transferring this case. CareersUSA argues that many of the witnesses who may provide testimony, including its human resources officer, its CEO, and Sanders-Darigo's supervisors, reside in Florida. However, the convenience of the witnesses should only be considered "to the extent that the witnesses may actually be unavailable for trial

selection clause remains the strongest indication of the parties' private interests; thus, the private considerations weigh in favor of transferring this case.

This cases involves questions of federal law that both federal district courts are equally poised to handle.[8]  There is no indication that either federal district court would be in a better position to enforce, expedite, or administrate this case. The public interest considerations remain neutral and do not weigh in either party's favor.  Therefore, I will grant CareersUSA's motion to transfer because the private interests of the parties, as manifested in their Agreement, weigh in favor of transferring this case.

## IV. CONCLUSION

For the reasons stated above, I will deny CareersUSA's motion to dismiss for failure to timely serve, and I will grant CareersUSA's motion to transfer this case to the United States District Court for the Southern District of Florida.[9]

---

in one of the fora." *Jumara*, 55 F.3d at 879.  CareersUSA has not stated, or provided any evidence, that the witnesses may be unavailable for trial.  Thus, this factor remains neutral.

[8] This case also includes claims of age and disability discrimination in violation of the PHRA.  Sanders-Darigo argues that the Eastern District of Pennsylvania is better equipped than the Southern District of Florida to analyze these Pennsylvania state law claims.  However, as Sanders-Darigo acknowledges, "federal courts generally interpret the PHRA in accordance with its federal interpretations of parallel Title VII, the ADA and ADEA law." Pl.'s Resp. 29; *accord Colwell v. Rite Aid Corp.*, 602 F.3d 495, 500 n.3 (3d Cir. 2010) (explaining that the same legal standards that apply to ADA and ADEA discrimination claims apply to PHRA disability and age discrimination claims).  Given that the legal standards to be applied to Sanders-Darigo's federal claims are identical to those that will be applied to her PHRA claims, it is disingenuous to argue that it would create "judicial inefficiency [to] ask[] a Florida court to interpret Pennsylvania state law . . . ." Pl.'s Resp. 41.

[9] CareersUSA has also filed a motion to dismiss claims for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  Because I am transferring the case, I decline to decide the Rule 12(b)(6) motion.  Additionally, I decline to entertain CareersUSA's request for attorney's fees.

s/Anita B. Brody

_____
ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:                 Copies **MAILED** on _____ to: